IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL STONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-1117-SEM-TSH |
| | ) |
| JUSTIN HAMMERS, et al. | ) |
| | ) |
| | ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION

**TOM SCHANZLE-HASKINS, U.S. Magistrate Judge.**

This cause is before the undersigned for a Report and Recommendation on the Motion to Enforce Settlement Agreement filed by Defendants (d/e 55). The undersigned recommends that the Motion to Enforce Settlement Agreement be GRANTED on the terms set forth below.

I.  BACKGROUND

Pro se Plaintiff Michael Stone filed this action alleging First Amendment free speech and Fourteenth Amendment procedural due process claims based on the confiscation of a letter Plaintiff had in his possession and his subsequent punishment for possessing the letter (d/e 1). Defendants maintained the letter contained gang

references and was an attempt to conduct an unauthorized business venture (d/e 15). The First Amendment claim survived summary judgment, and this case was then referred to the undersigned to conduct a settlement conference.

On August 8, 2018, the settlement conference was held and the parties reached a settlement agreement. The Court recorded the material terms of the settlement.[1] The material terms of the settlement were as follows:

1) The State would pay the Plaintiff the sum of $1,250.00 for settlement and dismissal of the case with prejudice;

2) The Court would order the waiver of Plaintiff's obligation to pay filing fees in this case and in other litigation in the amount of $774.22;

3) The Defendants' counsel would prepare a settlement agreement embodying the terms of the settlement, including a stipulation to dismiss.

---

[1] The recording of the August 8, 2018 settlement conference and the recording of the subsequent telephone conferences on October 18, 2018 and November 8, 2018 are available for transcription if necessary.

The Court informed the Plaintiff that the payment of the settlement award would not be made immediately and would probably be made within six months of the settlement agreement.

The Plaintiff raised two issues with the Court after the statement of the settlement agreement. The Plaintiff asked the Court if the case would be dismissed prior to payment of the settlement award. The Court indicated that the case would not be dismissed with prejudice until the settlement was paid. The Plaintiff also asked the Court if his Motion for Reconsideration (d/e 25), would be ruled upon by the Court. The Court informed the Plaintiff that the Motion for Reconsideration would not be ruled upon by the Court as settlement of the case ended all issues in the pending case. All issues in the case were resolved under the terms of the settlement. Plaintiff then indicated he understood the settlement and agreed to its terms.

Defendants sent a draft settlement agreement (d/e 49-1, p 1-6) to Plaintiff, who responded with his own handwritten draft of a settlement agreement (d/e 49-2, p 1-6). Plaintiff objected to the release language in paragraph 4 of the Defendants' agreement and the language in paragraph 1 stating that the amount paid in

settlement was subject to the State's obligation to withhold any funds which Plaintiff owed to the State. Plaintiff also sought to add a paragraph requiring the expungement of the Plaintiff's 8/7/2015 disciplinary report.

The undersigned held two conferences to address these issues. The first of these telephone conferences was held by the Court on October 18, 2018. The Court ordered that defense counsel report to the Plaintiff whether there was any amount to be paid in settlement that was subject to the State's obligation to withhold any funds the Plaintiff owed the State. During that telephone conversation, defense counsel indicated that the Plaintiff's settlement agreement did not conform with the terms of the settlement reached on August 8, 2018. The Court advised both parties that the settlement agreement must reflect the terms of the August 8, 2018 settlement. The Court directed defense counsel to provide to the Court, under seal, copies of the settlement agreement provided to the Plaintiff and Plaintiff's proposed settlement agreement. A further telephone conference was scheduled for November 8, 2018.

On October 30, 2018, counsel for the Defendants filed with the Court a sealed notice (d/e 49) regarding compliance with the

Court's orders made during the October 18, 2018 telephone status conference. Defense counsel noted that the Plaintiff's settlement agreement did not reflect the agreements reached at the August 8, 2018 settlement conference in two regards. First, the Defendants' counsel indicated the Plaintiff's settlement agreement added a provision that expunges his disciplinary ticket that is the subject of the litigation. Defense counsel also indicated that the Plaintiff's settlement agreement required that payment would be within 45 days of execution of the settlement agreement. Defense counsel further indicated that the Office of the Comptroller indicated there was no indebtedness which would involve involuntary withholding funds from the settlement proceeds payable to the Plaintiff under the terms of the settlement agreement.

The next telephone status conference regarding the settlement took place on November 8, 2018. During that telephone conference, defense counsel reported that the Comptroller's office indicated that there were no funds due and owing to the State or other creditors which would be deducted from the settlement proceeds payable to Plaintiff pursuant to the terms of the settlement reached in this case. The Court informed the Plaintiff that the expungement of the

grievance and the payment of the settlement amount within 45 days were not part of the settlement reached by the parties as they were never agreed to by the Defendants during the August 8, 2018 settlement conference which resulted in the settlement agreement in this case.

The Plaintiff indicated he objected to the terms of the settlement agreement provided by defense counsel due to his concern that other claims of the Plaintiff unrelated to this case were released by the settlement agreement. Defense counsel indicated that pursuant to the language of the settlement agreement provided by the Defendants only the claims regarding this case were released and settled by the settlement and dismissal of this litigation.

The specific language discussed was contained in paragraph four of the settlement agreement tendered by the Defendants. The Defendants' release indicated that various state departments of the State of Illinois and employees were released from "all actions, claims, demands, suits, causes of action, disputes, equitable relief, compensatory and punitive damages, attorney's fees, costs and expenses which arose or could have arisen from the facts alleged or claims made in the Action" (d/e 49-1, p 2). Plaintiff indicated he

interpreted the Defendants' language to release claims "outside of the claim that's being adjudicated" in this action. (Tape of November 8, 2018 conference with the Court at 2:43 p.m.) The Plaintiff wanted inclusion of the language contained in paragraph four of the Plaintiff's settlement agreement. That language was as follows:

> The Plaintiff, his heirs, successors and assigns, agrees to release, and hereby forever releases the defendants in their individual and official capacities, the IDOC, the State of Illinois, their agents, former and present employees, successors, heirs and assigns (referred to as "Releasees") from the above action (17-cv-1117-SEM-TSH).

The Court informed the parties that the legal effect of this language on the scope of the settlement was the same for each settlement agreement. That is, the only claims released were those which were asserted or could have been asserted in this case. Defense counsel told the Plaintiff and the Court that the Defendants' settlement agreement was "pertaining to this case and not any others you may have or may happen in the future" and was "just limited to the claims in this matter alone". (Tape of November 8, 2018 conference with the Court at 2:43 p.m.)

Defense counsel refused to include Plaintiff's language in the settlement agreement tendered by the Defendants and the Plaintiff refused to execute a settlement agreement which did not contain the language contained in the Plaintiff's proposed settlement agreement. Thus, it was clear to the Court that the parties could not agree to the terms of a written settlement agreement. The Plaintiff indicated he would not sign a settlement agreement with the language proposed by the Defendants and defense counsel indicated they would not sign a settlement agreement containing only the Plaintiff's release language. Consequently, the Court found that no written settlement had been reached and placed the matter back on the trial docket.

Subsequently, Defendants filed their Motion to Enforce Settlement Agreement (d/e 55) (Motion) which is currently before the Court. The Motion was referred to the undersigned for a Report and Recommendation.

## II.    LEGAL STANDARD

This Court has the inherent power to enforce a completed settlement agreement, provided that jurisdiction exists. Wilson v. Wilson, 46 F.3d 660, 664 (7th Cir. 1995). This case is currently

pending before this Court; judgment has not been entered, and the case has not been dismissed. The Court has jurisdiction over this matter.

When a settlement agreement is reached in open court the settlement agreement is seen as a final and complete resolution of the case. Herron v. City of Chicago, 618 F. Supp. 1405, 1407 (N.D. Ill. 1985). A settlement agreement is enforced as any other contract, applying state law. *See* Dillard v. Starcon intern., Inc., 483 F.3d 502, 506-07 (7th Cir. 2007)(state law controls enforcement of settlement agreements, even if the underlying claims are based on federal law); Carr v. Runyan, 89 F.3d 327, 331 (7th Cir. 1996).

Oral settlement agreements are enforceable under Illinois law so long as there has been a clearly defined offer, acceptance, and a meeting of the minds. Dillard, 483 F.3d at 507; Wilson, 46 F.3d at 666; Kim v. Alvey, Inc., 322 Ill. App. 3d 657, 669 (2001). Whether a meeting of the minds occurred depends on the parties' objective conduct rather than their subjective beliefs. Dillard, 483 F.3d at 507. Such oral agreements are enforceable as long as their terms are sufficiently definite, even if the parties did not spell out nonessential details. Wilson, 46 F.3d at 667.

## ANALYSIS

In preparing this Report and Recommendation, the Court reviewed the original settlement agreement which was put on the record at the conclusion of the August 8, 2018 settlement conference. The Court additionally reviewed the telephone conference of October 18, 2018, as well as the subsequent telephone conference of November 8, 2018. It was apparent, in reviewing the November 8, 2018 telephone conference that the Plaintiff and defense counsel could not agree on the terms of a written settlement agreement. This occurred even though the Court explained to the Plaintiff that the language of both settlement agreements reached the same result. Namely, that the scope of the claims released by the settlement agreement applied only to claims which are based upon the facts alleged in the Plaintiff's complaint filed in this case. While not agreeing to a written settlement, the conversation and representations made by the parties during the subsequent discussions regarding settlement indicated a meeting of the minds of the parties on all essential elements of the settlement, including the scope of the claims released by the settlement.

Plaintiff sought to add a paragraph in the settlement agreement that would require Defendants to expunge his discipline. Expungement was not included when the Court recited the material terms of the settlement on the record. Plaintiff's questions at that time were whether this case would be dismissed before payment of the settlement proceeds, what the settlement meant for his motion to reconsider the dismissal of his procedural due process claim, and what the filing fee waivers meant. The undersigned explained that this case would not be dismissed until Plaintiff received his money, that Plaintiff was forgoing his due process claim if he settled this case, and that Plaintiff would no longer owe the fees in this case and a second case.[2] The expungement of Plaintiff's disciplinary infraction was not contemplated and is not a part of the settlement agreement.

As for the release, Plaintiff stated he was concerned that his other pending claims would be impacted if he signed the form and that the release was never explained to him or discussed (d/e 46).

---

[2] Plaintiff has since filed another case, Stone v. Hammers, 18-cv-1389, to which the waiver does not apply. Additionally, if the District Court enforces the settlement in this case and Plaintiff appeals that ruling, the waiver would not apply to the $505 appellate fee. If the settlement is not enforced in this case, the waived fees will start being collected again.

The undersigned concluded based on Plaintiff's statements that a written settlement had not been reached as to the extent of the release. (11/8/18 text order.)

Upon review, however, the undersigned concludes that an enforceable settlement agreement was reached, including the scope of the settlement agreement. The release does not apply to other claims, such as the claims Plaintiff is now pursuing in <u>Stone v. Hammers</u>, 18-cv-1389 (C.D. Ill.).[3] A release of claims is a necessary part of any settlement. No defendant would agree to pay a settlement amount without a release. The Plaintiff stated his concern that the settlement included matters "outside the claims being adjudicated". Defense counsel indicated it did not. The parties reached an agreement on the scope of the release.

**IT IS, THEREFORE, RECOMMENDED** that based upon the authority cited above, the parties had a binding oral settlement on the following terms:

1. The Defendants shall pay the Plaintiff the sum of $1,250.00 by processing that payment through the regular procedures

---

[3] Case 18-1389 is about retaliation for the pursuit of this case. The alleged retaliation in 18-1389 occurred in 2017 and is not a part of this case.

followed by the Office of the Attorney General and the Comptroller;

2. The payment shall be processed in the ordinary course of business of the Comptroller's Office with no requirement of a specific date for making the payment;

3. The Plaintiff shall not be responsible for the filing fees in the total of $774.22. These filing fees have already been discharged by the Court's docket entry of August 8, 2018 which directed the discharge of the applicable fees. That entry was forwarded to the Peoria Finance Department and the Trust Fund Department of the Illinois Department of Corrections pursuant to that docket entry;

4. The scope of the claims released in the settlement is as follows: Plaintiff, his heirs, successors, and assigns release the Defendants in this case in their individual and official capacities, the Illinois Department of Corrections, the State of Illinois, their agents, former and present employees, successors, heirs, and assigns from all actions, claims, demands, suits, causes of action, disputes, equitable relief, compensatory and punitive damages, attorney's fees, costs

and expenses which arose or could have arisen from the facts alleged and claims made in this case; and,

5. This case will be dismissed with prejudice after the payment of the settlement amount set forth above from Defendants to Plaintiff.
6. Counsel for the Defendants is ordered by this Court to track the payment of the settlement award in this case and to inform the Court when the payment has been made.

If payment is not made on or before October 21, 2019, counsel for Defendants shall file a written status report with the Court stating the status of the payment.

Upon the reporting of the payment of the settlement, the Court will dismiss this matter with prejudice on the terms stated above.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the clerk within fourteen (14) days after being served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C).  Failure to object timely will constitute a waiver of objection on appeal.  <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED: June 21, 2019

                       s/ *Tom Schanzle-Haskins*
                      **TOM SCHANZLE-HASKINS**
                      **UNITED STATES MAGISTRATE JUDGE**